**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CIRIACO VINCENTE ALVARADO PEREZ, | ) | CASE NO. 5:21-CV-1071-JJH |
| | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| Petitioner, | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| WARDEN KENNETH BLACK, | ) | |
| | ) | |
| | ) | REPORT & RECOMMENDATION |
| Respondent, | | |

## I.    Introduction

Petitioner, Ciriaco Vincente Alvarado Perez, an Ohio prisoner currently serving a 10-year sentence for aggravated vehicular assault, operating a vehicle under the influence of alcohol, a drug abuse or a combination of them, and unauthorized use of a vehicle, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 on May 17, 2021. (ECF No. 1). Respondent, Warden Kenneth Black, filed a return of writ in which he moved to dismiss Perez's petition as untimely and because Perez's claims are time-barred, not cognizable, procedurally defaulted, and meritless.[1] (ECF No. 7).

This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Perez's petition and other case-dispositive motions. Because Perez's petition was not filed within the one-year limitations period under 28 U.S.C. §

---

[1] As the court finds that Perez's petition is untimely, the court need not address the Warden's additional arguments.

1

2244(d)(1) and because Perez is not entitled to equitable tolling, I recommend that the Court GRANT Warden Black's motion and dismiss the petition in its entirety.

## II.    Procedural History

### A.    State Conviction

On February 26, 2019, a Wayne County, Ohio grand jury indicted Perez on two counts aggravated vehicular assault, in violation of Ohio Rev. Code § 2903.08(A)(1)(a) (Counts 1 and 2), two counts vehicular assault, in violation of Ohio Rev. Code § 2903.08(A)(2)(b) (Counts 3 and 4), one count operating a vehicle under the influence of alcohol, a drug abuse or a combination of them, in violation of Ohio Rev. Code § 4511.19(A)(1)(a) (Count 5), and unauthorized use of a vehicle, in violation of Ohio Rev. Code § 2913.03(A) (Count 6). (ECF No. 7-1 at Ex. 1).  On July 31, 2019, Perez pleaded guilty to Counts 1, 2, 5 and 6. (ECF No. 7-1 at Ex. 5).  On September 11, 2019, the court conducted a sentencing hearing and sentenced Perez on Counts 1, 2, 5 and 6 to an aggregate sentence of ten years.  (ECF No. 7-1 at Ex. 7).  Judgment was entered on September 12, 2019. (*Id.*).

### B.    Delayed Appeal

On November 20, 2019, Perez, pro se, filed an untimely notice of appeal (ECF No. 7-1 at Ex. 8) and a motion for leave to file a delayed appeal (ECF No. 7-1 at Ex. 9) in the Ohio Court of Appeals. On January 2, 2020, the Ohio Court of Appeals found Perez's delay in filing his direct appeal was not justified, denied his motion, and dismissed his delayed appeal.  (ECF No. 7-1 at Ex. 12).  On February 13, 2020, Perez, pro se, filed a Notice of Appeal (ECF No. 7-1 at Ex. 13) with the Ohio Supreme Court. In his memorandum in support of jurisdiction, Perez raised the following proposition of law:

> **Proposition of law No. I:** The Court of Appeals abused its discretion in denying Appellant's motion for delayed appeal pursuant to App.R. 5(A).

2

(ECF No. 7-1 at Ex. 14).

On March 31, 2020, the Ohio Supreme Court declined to accept jurisdiction. (ECF No. 7-1 at Ex. 15).

### III.    Federal Habeas Corpus Petition

On May 17, 2021, Perez, pro se, petitioned for a writ of habeas corpus from this court. (ECF No. 1).  Perez's petition asserted the following grounds for relief:

> **Ground One:** Perez was denied his right to due process under the 14th Amendment.
>
> **Supporting Facts:** Perez was denied his due process right to appeal his conviction and sentence, where the trial court failed to advise him of said right, and failing to execute any oral or documentary waiver to a non-English speaking (at the time) criminal defendant.
>
> **Ground Two:** Perez was denied his right to the effective assistance of counsel under the 6th Amendment.
>
> **Supporting Facts:** Perez was denied right to the effective assistance of counsel, where counsel failed to advise him of his right to appeal his conviction and sentence, and failed to file a notice of appeal where his client (Perez) did not fluently speak or read English which raises an issue of an intelligently entered plea, and where his client (Perez) received maximum, consecutive, and mandatory terms of imprisonment.

(*Id*. at PageID #: 5-7).

### IV.    Law and Analysis

### A.  Statute of Limitations under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus under 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A conviction becomes final under § 2244(d)(1)(A) when direct review concludes, not when the petitioner has exhausted all state remedies. *See Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001); *see also Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000) (noting that the one-year limitations period under § 2244(d)(1)(A) does not begin to run until the day after the petition for a writ of certiorari was due in the Supreme Court). A judgment is final when the time to file a direct appeal to the state appellate court expires, unless the state appellate court grants a motion to file an out-of-time appeal. *Jimenez v. Quarterman*, 555 U.S. 113, 120-21 (2009). An Ohio criminal defendant has 30 days from the date his conviction and sentence become final to file a timely direct appeal. Ohio R. App. P. 4(A). The habeas one-year statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Lopez v. Wilson*, 426 F.3d 339, 351-52 (6th Cir. 2005) (*en banc*) (holding that a motion to reopen under Ohio R. App. P. 26(B) is a collateral proceeding). A post-conviction relief petition is considered "properly filed" only if it meets the applicable state rules governing filing. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Walker v. Smith*, 360 F.3d 561, 563 (6th Cir. 2004). "[T]ime limits, no matter their form, are 'filing' conditions." *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Untimely

post-conviction petitions or other collateral motions do not toll the AEDPA statute of limitations, despite any exceptions to the timely filing requirement that might exist under state law. *See id.* at 413-14.

### B. Untimely Petition

The Warden argues that Perez's AEDPA statute of limitations began running on Monday, October 14, 2019. (ECF No. 7 at 6). Additionally, the Warden argues that the statute of limitations continued to run until Perez filed his motion for delayed appeal on November 20, 2019, which the Warden contends tolled his statute of limitations until March 21, 2020.[2] (*Id.*) The Warden further argues that there is no tolling for the ninety-day period to apply for a writ of certiorari to the Supreme Court. (*Id.*) As such, the Warden argues that Perez's instant petition was filed 411 days after his statute of limitations resumed running and is therefore untimely. (*Id*).

Perez argues that the Warden's calculation is incorrect. Perez argues that his conviction did not "become final until the time for seeking all direct remedies in State courts runs, [so] the only way any time between the filing of a delayed appeal should count for 2244 purposes is if the delayed appeal was filed after the forty five (45) day limit to seek discretionary review in the Ohio Supreme Court expired, which it had not." (ECF No. 13 at 4-5). Perez further argues that "[i]n Ohio, a person's conviction does not become final for seventy five (75) days after sentence if he takes no action at all. And the time to seek federal review does not begin to run if a person takes action within that seventy five (75) day period as provided by law." (*Id*. at 5). Nevertheless, Perez "does not dispute that his petition is untimely." (*Id.*) Rather, Perez contends that he is entitled to equitable tolling. (*Id.*)

---

[2] The Warden incorrectly lists March 21, 2021 as the date the Ohio Supreme Court declined jurisdiction when the correct date is March 31, 2021. (ECF No. 7-1 at Ex. 15). However, the Warden used the correct March 31 date to calculate the number of days the statute of limitations ran.

The Court agrees with the Warden's calculation. Perez had thirty days to file a direct appeal from September 12, 2019—the date of his conviction.  See Ohio R. App. P. 4(A); (ECF 7-1 at Ex. 7.) As such, Perez's judgment became final on October 14, 2019[3]— when his time to file a direct appeal to the Ohio Court of Appeals expired. Ohio R. App. P. 4(A).  Thus, Perez's statute of limitations under 28 U.S.C. § 2244(d)(1)(A) began to run on October 15, 2019—the day after his conviction became final.  Perez's statute of limitations ran for 36 days until November 20, 2019—the day Perez filed a motion for delayed appeal which tolled the statute of limitations for the period the motion was pending. *Whalen v. Randle*, 37 F. App'x 113, 118 (6th Cir. 2002).    On January 2, 2020, the Ohio Court of Appeals denied and dismissed Perez's delayed appeal. (ECF No. 7-1 at Ex. 12).  On March 31, 2020, the Ohio Supreme Court declined to accept jurisdiction. (ECF No. 7-1 at Ex. 15).  Consequently, the statute of limitations resumed running the next day—April 1, 2020—and ran for another 329 days until it expired on February 24, 2021.  Perez filed the instant petition on May 17, 2021, almost three months—82 days—after the AEDPA statute of limitations expired.  Thus, the Warden is correct that after Perez's statute of limitations resumed, it ran for another 411 days before Perez filed the instant petition. In total, Perez's statute of limitations ran for 447 days before he filed the instant petition.  As such, as Perez appears to concede, the instant petition is untimely.  (ECF No. 13 at 5).

## C.  Equitable tolling

Despite agreeing that the instant petition is untimely, Perez argues that he qualifies for equitable tolling.  Because AEDPA's statute of limitations is not jurisdictional, it is subject to

---

[3] Thirty days after the judgment was entered is October 12, 2019. However, that was a Saturday; thus, according to Ohio Rule of Appellate Procedure 14(A), Perez had until Monday, October 14, 2019 to file his direct appeal. The statute of limitations period began to run the following day and expired 365 days thereafter.

equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace*, 544 U.S. at 418). The unavailability of or delay in receiving trial or other transcripts is not an "extraordinary circumstance" that prevents a habeas petitioner from filing a timely petition, and, thus, does not warrant equitable tolling. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750-51 (6th Cir. 2011) (explaining that the habeas rules require the state, not the petitioner, to "furnish the petitioner with the record once a habeas petition has been filed"). Similarly, a petitioner's *pro se* status or ignorance of procedural requirements "are not sufficient to constitute an extraordinary circumstance and to excuse his late filing." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) (citing *Hall*, 662 F.3d at 751–52; *Winkfield v. Bagley,* 66 F. App'x 578, 583 (6th Cir. 2003)).

Perez argues that the issue of equitable tolling is "a moot point" because "[he] raised his equitable tolling grounds within his petition which the court implicitly accepted by ordering a return of writ." (ECF No. 13 at 1). Perez further argues that "[h]ad the court disagreed with [his] grounds, then it would have dismissed the petition sua sponte after giving [him] an opportunity to raise grounds for equitable tolling if he had not already done so, however since the court has already considered the issue of equitable tolling and ordered a return of writ the issue of equitable tolling is a moot point." (*Id*. at 1-2). Second, Perez argues that his petition is entitled to equitable tolling due to the "extraordinary circumstances created by the coronavirus." (ECF No. 1 at PageID #: 13). Specifically, Perez argues that "[w]hen [his] request for jurisdictional review was denied on March 31, 2020, the Ohio Supreme Court issued a tolling order active until July 2020" and the law library was shut down due to the coronavirus until April 6, 2021, "which restricted access to

all legal materials and knowledgeable prisoners." (*Id*. at PageID #: 13-14). Further, relying on *Holland v. Florida*, 560 U.S. 631, Perez argues "[b]ecause [he] is not fluent in English—either reading or writing—and was not born with any inherent knowledge of the American legal system, when compounded by the foregoing restrictions, equitable tolling should be applied." (*Id*.).

The Warden argues that Perez is not entitled to equitable tolling because "[he] was not diligent in pursuit of his claims during the relevant time period" and "has not provided evidence demonstrating that an 'extraordinary circumstance stood in his way to prevent the timely filing." (ECF No. 7 at 10). Specifically, the Warden contends that Perez is not entitled to equitable tolling based on the pandemic because "he fails to sufficiently explain what additional materials he needed [from the law library] or why lack of access to those materials actually prevented him from timely filing his petition." (*Id*. at 11). Additionally, the Warden contends that "neither [Perez's] pro se status nor his professed ignorance of the law will justify equitable tolling of the limitations period for filing a federal habeas petition." (*Id*.). The Warden further argues that Perez is not entitled to equitable tolling due to "Perez's claim of lack of fluency with the English language" because "[he] did not lack access to the courts due to his deficient proficiency in English." (*Id*. at 12).

As an initial matter, Perez is incorrect regarding his argument that the issue of equitable tolling is a "moot point." (ECF No. 13 at 1). The Supreme Court has previously held "that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006). However, the Court cautioned that "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *Id*. at 210. Here, the Court did not *sua sponte* consider the timeliness of Perez's petition or whether it qualified for equitable tolling nor did the Court give

the Warden time to present his position on equitable tolling before the return of writ was filed. As such, the issue of equitable tolling is properly before the Court and will be decided herein.

Thus, the Court must determine whether Perez has been pursuing his rights diligently and whether an extraordinary circumstance stood in his way.  Perez's statute of limitations resumed running after the Ohio Supreme Court declined jurisdiction on March 31, 2020.  When it resumed, Perez had 329 days to timely file the instant petition.  Rather than filing a timely petition during that timeframe, Perez waited 411 days to file the instant petition.  Perez and the Warden appear to agree that the law library was closed during the majority of this time due to the COVID-19 pandemic.  Additionally, Perez is correct in noting that "some courts have recognized that the Covid-19 pandemic could lead to an extraordinary circumstance warranting tolling under certain circumstances."  *See, e.g., Pryor v. Erdos*, No. 5:20CV2863, 2021 WL 4245038, at *9 (N.D. Ohio Sept. 17, 2021) (collecting cases).  "However, a petitioner seeking tolling on such a basis must still demonstrate fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition."  (*Id.*) (collecting cases).

Perez fails to demonstrate fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition.  Perez argues that he is entitled to equitable tolling due to two factors.  First, he asserts he could not file the instant petition timely because the law library was closed, which prevented him access "to all legal materials and knowledgeable prisoners." (ECF No. 1 at PageID #: 14).  Second, Perez asserts that "[b]ecause he is not fluent in [E]nglish— either reading or writing—and was not born with any inherent knowledge of the American legal system, when compounded by the foregoing restrictions, equitable tolling should be applied."  (*Id.*) "However, the diligence requirement imposes on the prisoner a substantial obligation to make all

reasonable efforts to obtain assistance to mitigate his language deficiency." *United States v. Lemos*, No. 10-CR-954 (NGG), 2023 WL 4707854, at *3 (E.D.N.Y. July 24, 2023)

Perez wholly fails to demonstrate that he made any effort to try and timely file his habeas petition and that any fact-specific circumstances stood in his way. Perez merely alleges that he is unable to understand or write in English and the pandemic prevented him access "to all legal materials and knowledgeable prisoners." (ECF No. 1 at PageID #: 14). These bare assertions are not enough.

The Sixth Circuit has previously held "that where a petitioner's alleged lack of proficiency in English has not prevented the petitioner from accessing the courts, that lack of proficiency is insufficient to justify an equitable tolling of the statute of limitations. An inability to speak, write and/or understand English, in and of itself, does not automatically give a petitioner reasonable cause for failing to know about the legal requirements for filing his claims." *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). "In general, the existence of a translator who can read and write English and who assists a petitioner during his appellate proceedings implies that a petitioner will not have reasonable cause for 'remaining ignorant of the legal requirement for filing his claim.'" *Id.* "Importantly, *Cobas* imposed no 'standards of competency on the English language translator'; rather, the panel noted that the translator 'need have no qualification other than the ability to communicate in English.'" *Vasquez v. Genovese*, No. 21-5349, 2021 WL 4692690, at *3 (6th Cir. Sept. 17, 2021) (citing *Cobas*, 306 F.3d at 444); *see also Vasquez v. Phillips*, No. 20-5193, 2020 WL 4805576, at *2 (6th Cir. July 8, 2020). "*Cobas* has been construed to mean that 'a non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library

personnel or other source.'" *Montoya-Sancen v. Corrigan*, No. 2:20-CV-10342, 2023 WL 373875, at *3 (E.D. Mich. Jan. 24, 2023) (citing *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006)).

Here, Perez has not alleged any diligent efforts he took to file a timely petition.  He simply states the law library was closed and that he did not have access to a "knowledgeable prisoner." He does not state that he attempted to obtain legal materials in his own language, a translator, or that he attempted to seek assistance from anyone inside or outside the prison to file his petition. Thus, Perez fails to allege efforts to satisfy the diligence requirement.  *See Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008) ("Neither Diaz nor Tan have alleged efforts that satisfy the diligence requirement. Both have claimed nothing more than the unavailability of personnel within their prisons who could translate for them during the applicable limitations periods. There is no allegation of any efforts to contact anyone outside the prison who might assist in making them aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement."); *see also Lemos*, 2023 WL 4707854, at *3 ("In order to act with the due diligence required for equitable tolling on the basis of a lack of proficiency in English, the prisoners had to exert effort to contact someone outside prison who might assist them with learning the legal requirements for filing habeas corpus petitions in their language and exert effort to learn of such requirements within their places of confinement.")

Moreover, the instant case is clearly distinguishable from the cases Perez cites where courts found equitable tolling was warranted where the petitioner lacked proficiency in English. In each of those cases, the petitioner demonstrated that they made diligent efforts to timely file a habeas petition and that specific circumstances prevented their timely filing.  *See Pabon v. Mahanoy*, 654 F.3d 385, 402 (3d Cir. 2011) ("count[ing] ten or more efforts where [the petitioner] sought

11

assistance, both before and after the AEDPA deadline" such as attempting to obtain Spanish-language legal materials, writing to attorneys to seek help, "submit[ting] 'numerous written requests' seeking legal materials or assistance within the prison system," submitting a letter to the law library seeking assistance from a staff paralegal, and filing an "Official Inmate Grievance" after he was denied assistance.); *Mendoza v. Carey*, 449 F.3d 1065, 1069 (9th Cir. 2006) ("According to his declaration, when Mendoza was first incarcerated, he requested Spanish-language legal materials but was told to 'wait until [he] got to[his] regular assigned prison.' After arriving at Solano State Prison, he made several trips to the library but found only English-language books and only English-speaking clerks and librarians. Not until Mendoza found a newly-arrived, bilingual inmate willing to offer assistance was he able to file his habeas petition; however, by this time, the AEDPA deadline had already passed."); *see also Ruiz v. McGinley*, No. CV 18-880, 2023 WL 2139822, at *7 (E.D. Pa. Feb. 21, 2023) (finding that Ruiz demonstrated reasonable diligence where upon arrival in state prison he quickly requested and received Legal Aide; when Aide was taken away he filed a grievance and sought assistance from another inmate until that inmate was transferred; when the inmate assisting him was transferred, Ruiz sought assistance from second inmate until he was placed in the Restricted Housing Unit ("RHC"); "[e]ven while in the RHC, Ruiz submitted a request to staff that he wanted to 'put in for habeas corpus'" and "filed a request for missing documents and items that needed to compile his petition;" and "sought English language assistance from individuals celled near him in the RHC in compiling these requests to the RHC staff").

In sum, Perez fails to demonstrate that he took any diligent efforts to obtain the assistance he needed to timely file his petition. While the COVID-19 pandemic certainly created unusual circumstances and unfortunately may have required prisoners such as Perez—especially those with

language barriers—to put forth more effort to file a habeas petition, the circumstances do not automatically warrant equitable tolling. *United States v. Henry*, No. 2:17-CR-00180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) ("The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for any petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion."). Perez fails to prove that he diligently pursued his rights during the limitations period. As such, the Court need not consider whether the COVID-19 pandemic created an extraordinary circumstance that stood in his way and prevented him from timely filing the instant petition. Perez is not entitled to equitable tolling. Consequently, the instant petition should be dismissed.

## V. Certificate of Appealability

### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B. Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is

two-fold. In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. If the Court accepts my recommendations, Perez will not be able to show that the Court's conclusion that his petition was untimely under 28 U.S.C. § 2244(d)(1) is debatable. Thus, I recommend that a certificate of appealability not be issued.

## VI.    Recommendation

Because Perez's petition was not filed within the one-year limitations period under 28 U.S.C. § 2244(d)(1) and because Perez is not entitled to equitable tolling, I recommend that the Court GRANT Warden Kenneth Black's motion (ECF No. 7) to dismiss Perez's petition for writ of habeas corpus. I further recommend that Perez not be granted a certificate of appealability.

DATED: January 30, 2023

                *s/Carmen E. Henderson*
                Carmen E. Henderson
                United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).